IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EMMANUEL N. LAZARIDIS,<br>individually and in his capacity as<br>legal custodian of V.L., a minor,<br><br>Plaintiff,<br><br>v.<br><br>LAVINA TINA WEHMER, MATTHEW<br>NEIDERMAN, CATHERINE SUTER,<br>AFRODITI MINA MAUROEIDI, OFFICE<br>OF THE ATTORNEY GENERAL OF<br>THE STATE OF DELAWARE by and<br>through Joseph R. Biden, III,[1]<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Civ. Action No. 06-793 SLR<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM ORDER

At Wilmington this $\partial \mathfrak{H}^{\text{th}}$ day of October, 2008, having screened the case pursuant to 28 U.S.C. § 1915;

IT IS ORDERED that:  (1) the April 19, 2007 service order (D.I.8) is **vacated**; (2) the complaint is **dismissed** for lack of subject matter jurisdiction under *Rooker-Feldman* doctrine or, in the alternative, by reason of res judicata and collateral estoppel; under the *Younger* abstention doctrine; as frivolous; and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); (3) the court **declines** to exercise supplemental jurisdiction; and (4) the ex parte motions for renewed consideration of prior motions and for service (D.I. 33, 34) are **denied as moot,** for the reasons that follow:

---

[1]Delaware Attorney General Joseph R. Biden, III is currently on active duty with the United States Army as a member of the Delaware Army National Guard.

1. **Background**. Plaintiff Emmanuel N. Lazaridis ("plaintiff") appears pro se and has been granted leave to proceed in forma pauperis. This case revolves around an on-going custody dispute over V.L., the minor child of plaintiff and his former spouse, defendant Lavina Wehmer ("Wehmer"). Other named defendants include the Attorney General of the State of Delaware and three attorneys who represented Wehmer in various judicial proceedings in Delaware, France, and Greece. Plaintiff seeks a declaration that the Delaware Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), 13 Del. C. §§ 1901 through 1943, and the Delaware Uniform Interstate Enforcement Act ("UIFSA"),13 Del. C. §§ 601 through 691, superseded by 13 Del. C. §§ 6-101 through 6-903, effective July 1, 2006, are unconstitutional.[2] He seeks injunctive relief to prevent the State of Delaware from enforcing current or future foreign orders registered in the Delaware Family Court ("Family Court") under the UCCJEA or UIFSA. He also seeks injunctive relief to preclude private parties from either registering French orders in Delaware courts or seeking enforcement of orders. Finally, plaintiff seeks compensatory and punitive damages from Wehmer and the attorneys who have represented her.

2. The court entered a service order on April 19, 2007 and required plaintiff to submit certified translations for each foreign defendant.[3]  (D.I. 8)  Plaintiff submitted the

---

[2]Plaintiff mistakenly cites the UIFSA as 13 Del. C. § 6.

[3]The complaint states that defendants Wehmer and attorney Afroditi Mina Mauroeidi ("Mauroeidi") live in Greece and defendant Catherine Suter ("Suter") is in France.  Plaintiff recently filed a motion for the cost of translation to be borne by this court or the U.S. Marshal Service. (D.I. 34)  Plaintiff filed this suit and, as is the practice of this court, he was required to provide copies for service upon foreign defendants.

2

documents to the court on July 13, 2007. (D.I. 9) On August 8, 2007, the court dismissed the case without prejudice pursuant to the fugitive disentitlement doctrine. (D.I. 13) Plaintiff appealed the dismissal. Thereafter, the United States Court of Appeals for the Third Circuit vacated the decision and remanded the case for further proceedings stating, "[o]n remand, the District Court may wish to consider whether service of the complaint on the defendants is appropriate. *Lazaridis v. Wehmer*, No. 07-3572, 2008 WL 3823906 (3d Cir. Aug. 15, 2008).

3. **Standard of Review**. When a litigant proceeds in forma pauperis, 28 U.S.C. § 1915 provides for dismissal under certain circumstances. Section 1915(e)(2)(B) provides that the court may dismiss a complaint, at any time, if the action is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant immune from such relief. An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

4. In performing the court's screening function under § 1915(e)(2)(B), the court applies the standard applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Fullman v. Pennsylvania Dep't of Corr.*, No. 4:07CV-000079, 2007 WL 257617 (M.D. Pa. Jan. 25, 2007) (citing *Weiss v. Cooley*, 230 F.3d 1027, 1029 (7th Cir. 2000). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *Erickson v. Pardus*, –U.S.–, 127 S.Ct. 2197, 2200 (2007);

---

Under the Hague Convention, translations are required to effect service upon foreign defendants. Moreover, plaintiff chose to sue foreign defendants. The cost of translation shall not borne by this court or the U.S. Marshal. Had plaintiff prevailed in this action he could have sought the costs of translation pursuant to 28 U.S.C. § 1920. He is not a prevailing party and, therefore, § 1920 is inapplicable.

3

*Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, –U.S.–, 127 S.Ct. 1955, 1964 (2007); Fed. R. Civ. P. 8.

5. A complaint does not need detailed factual allegations, however, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). Plaintiffs are required to make a "showing" rather than a blanket assertion of an entitlement to relief. *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests. *Id.* (citing *Twombly*, 127 S.Ct. at 1965 n.3). Therefore, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Id.* at 235 (quoting *Twombly*, 127 S.Ct. at 1965 n.3). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Id.* at 234. Because plaintiff proceeds pro se, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent

4

standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, –U.S.–, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

6. **Discussion**.[4]  Plaintiff currently resides in Greece with V.L.  Plaintiff and Wehmer were married in 1995 in Indiana, and V.L. was born in July 2000.  In February 2002, the family moved to Wilmington, Delaware.  A few months later, in May 2002, the family moved to Lyon, France.  In September 2002, Wehmer moved with V.L. to Michigan where Wehmer's family lives.  Divorce proceedings ensued in Michigan and France and apparently in the Dominican Republic.[5]

7. In November 2002, plaintiff was granted temporary custody of V.L. by the Ottawa County Court in Michigan.  At some point, plaintiff took V.L. to Greece, where they currently reside.  In September 2003, the Ottawa County Court determined that it did not have jurisdiction over the custody proceedings, and the custody dispute was litigated in France.  On June 29, 2004, a French court granted Wehmer and plaintiff joint custody of V.L., but ordered that the child's primary residence would be with Wehmer. The French custody order was registered in Michigan, and in October 2004, the Ottawa County Court issued an arrest warrant for plaintiff for felony kidnapping.[6]

---

[4]The facts in this case are largely taken from *Lazaridis v. Wehmer*, No. 07-3572, 2008 WL 3823906 (3d Cir. Aug. 15, 2008).

[5]On May 16, 2005, a Greek court recognized a Dominican Republic divorce decree.  The Dominican Republic decree states that plaintiff is to exercise sole physical and legal custody of V.L.  (D.I. 2, ¶¶ 44-47)

[6]Plaintiff represented to the U.S. Court of Appeals for the Third Circuit that he is not now a fugitive as he has answered the Ottowa County, Michigan arrest warrant and has been assigned an attorney to defend him against the charge. *Lazaridis,* 2008 WL 3823906 at *3.

8. On July 2, 2004, Wehmer registered the June 29, 2004 French custody order in the Family Court. Plaintiff appealed the registration of the June 29, 2004 French custody order to the Delaware Supreme Court, and it affirmed the judgment of the Family Court in all respects. *Letsos v. Warren*, No. 461,2005, 901 A.2d 120, 2006 WL 1640218 (Del.) (table decision).[7] On appeal, plaintiff raised two constitutional issues: (1) the UCCJEA violated his due process under the Delaware Constitution, and (2) the UCCJEA, as applied to plaintiff, violated his right to due process under the Delaware Constitution. The Delaware Supreme Court found that plaintiff had not raised the constitutional issues in Family Court and, therefore, declined to consider the issues.[8] *Id.* at *2. Plaintiff also raised three jurisdictional issues, but the Delaware Supreme Court found the jurisdictional claims to be "unavailing." *Id.* at *3. Finally, the Delaware Supreme Court held that the Family Court correctly ordered registration of the June 29, 2004 French custody order, correctly denied a motion for reargument filed by plaintiff, and acted within its discretion when it denied plaintiff's motion to stay. *Id.*

9. On August 4, 2006, plaintiff filed a motion in Family Court requesting relief from registration and enforcement of the June 29, 2004 French custody order, on the

---

[7]The Delaware Supreme Court assigned pseudonyms to the parties and their minor child pursuant to Delaware Sup. C. R. 7(d). *Letsos v. Warren*, 2006 WL 1640218 n.1.

[8]The Delaware Supreme Court noted that the constitutional claims appeared to be "based upon a misunderstanding of the rationale underlying the UCCJEA," explaining that "[r]egistration of a foreign custody order in Delaware does not mean that the Delaware Family Court has assumed jurisdiction over the matter for all purposes. Rather, registration is a ministerial act for purposes of enforcement of the order of the foreign court, which retains jurisdiction over the matter." *Letsos v. Warren*, 2006 WL 1640218 at *2.

6

basis that Greece was exercising jurisdiction over the minor child.  Next, on October 11, 2006, Wehmer requested that the Family Court register an April 5, 2005 French order that gave her the right to "exclusively exercise parental authority" over the minor child. (D.I. 22)  In turn, on December 8, 2006, plaintiff filed a motion to vacate registration of foreign child support order.  (*Id.*)  Before the Family Court could issue a ruling, plaintiff filed this action on December 27, 2006.

10.  Meanwhile, on January 31, 2007, a Greek court granted plaintiff temporary custody of the minor child.  (D.I. 22)  An April 27, 2007 hearing before the same Greek tribunal continued the January 31, 2007 order.  On July 30, 2007, the Family Court issued a disposition that vacated the registration of the April 5, 2005 French order, citing to the January 2007 Greek order.  (D.I. 22)  One month later, on August 29, 2007, plaintiff requested that the Family Court reopen its decision and vacate the order that registered the June 29, 2004 French custody order in light of the January 31, 2007 Greek court order granting him temporary custody of V.L.  (D.I. 29)  On November 29, 2007, the Family Court denied plaintiff's request, noting that he had not sought to register the 2007 Greek order, stating that the request was barred by res judicata, and that "neither party is prejudiced by the registration . . . [of the 2004 French order].  Both parties are free, at any time, to attempt to register the most recent order that has been issued by a court maintaining proper jurisdiction over this matter."  (D.I. 29; *T.W. v. E.L.,* No. CN04-08707, 2007 WL 4793123, at *2 (Del. Fam. Ct. Nov. 29, 2007).  On September 16, 2008, the Delaware Supreme Court affirmed the judgment of the Family

7

Court. *Little v. White*, No. 659, 2007, 2008 WL 4216354 (Del. Sept. 16, 2008).[9]

11. **Jurisdiction**. The complaint states that this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 2201 (declaratory judgment), and 28 U.S.C. § 1367(a) (supplemental jurisdiction over related claims). (D.I. 2, ¶ 9) Plaintiff does not cite any grounds that confer jurisdiction to this court under either 28 U.S.C. § 1331 or 28 U.S.C. § 2201.

12. Whenever it appears that the court lacks jurisdiction of the subject matter, the court shall dismiss the action. Fed. R. Civ. P. 12(h); *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 77 (3d Cir. 2003) (subject matter jurisdiction is non-waivable and the court can raise *sua sponte* subject matter jurisdiction concerns). Plaintiff's reference to "Articles 5 and 14 of the United States Constitution" does not create a colorable constitutional claim.[10] (D.I. 2, ¶ 65) In addition, the UIFSA does not allow for the exercise of federal jurisdiction under 28 U.S.C. § 1331. The UIFSA is not a federal statute but, rather, a uniform state law that has been passed by all fifty states and is subject to interpretation by state courts. *Robinson v. Pabon*, Civ. No. No. 3:01CV1397(WWE), 2002 WL 32136677 (D. Conn. Jan. 2, 2002); *Nunnery v. State of Florida*, 102 F. Supp. 2d 772, 776 (E.D. Mich. 2000) (the UIFSA is "not [a] federal law but instead a model state law, versions of which have been enacted by various states . . ." There is no precedent for

---

[9]The Delaware Supreme Court assigned pseudonyms to the parties and their minor child pursuant to Delaware Sup. C. R. 7(d). *Letsos v. Warren*, 2006 WL 1640218 n.1.

[10]Presumably plaintiff refers to the Fifth and Fourteenth Amendments to the United States Constitution.

the exercise of federal jurisdiction where this statute is involved.).  Additionally, the

UCCJEA does not confer federal jurisdiction.  *Cahill v. Kendall*, 202 F. Supp. 2d 1322,

1328 (S.D. Ala. 2002) (The UCCJEA does not create any federal right of action as it is a

state procedural act.).  Finally, the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and

2202, does not independently confer federal court jurisdiction.  *Skelly Oil Co. v. Phillips*

*Petroleum Co.*, 339 U.S. 667, 671-72 (1950); *Warner-Jenkinson Co. v. Allied Chem.*

*Corp.*, 567 F.2d 184, 186 (2d Cir. 1997).

  13.  ***Rooker-Feldman* Doctrine.**[11]  The complaint attacks judicial decisions

rendered by Delaware courts.  Federal district courts are courts of original jurisdiction

and have no authority to review final judgments of a state court in judicial proceedings.

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).  Federal review of a state court's final

decision lies only with the United States Supreme Court.  *Id.*  The Supreme Court has

narrowed the *Rooker-Feldman* doctrine, emphasizing that it "is confined to cases of the

kind from which the doctrine acquired its name: cases brought by state-court losers

complaining of injuries caused by state-court judgments rendered before the district

court proceedings commenced and inviting district court review and rejection of those

judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

---

[11]The *Rooker-Feldman* doctrine refers to principles set forth by the Supreme
Court in *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923), and *District of Columbia
Court of Appeals v. Feldman,* 460 U.S. 462 (1983).  Because the doctrine divests the
court of subject matter jurisdiction, it may be raised at any time by the court *sua sponte.*
*Desi's Pizza, Inc. v. City of Wilkes-Barre,* 321 F.3d 411, 419 (3d Cir. 2003); *Nesbit v.
Gears Unlimited, Inc.,* 347 F.3d 72, 77 (3d Cir. 2003).

The U.S. Court of Appeals for the Third Circuit explains that the *Rooker-Feldman* doctrine is not applicable when a party complains of an injury "not caused by the state-court judgment but instead attributable to defendants' alleged . . . violations that preceded the state-court judgment." *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 547 (3d Cir. 2006)

14. With regard to the June 29, 2004 French custody order, plaintiff specifically asks this court to issue injunctive relief to prevent the State of Delaware from enforcing the registered French order. While plaintiff couches his claim by challenging the constitutionality of the UCCJEA and UIFSA, he actually seeks review and rejection of the Delaware state court decisions regarding the registration of the June 29, 2004 French custody order. The claim falls under the purview of the *Rooker-Feldman* doctrine and, therefore, the court cannot exercise jurisdiction over the claim.

15. **Res Judicata/Collateral Estoppel**. Even if the claim attacking the Delaware court rulings regarding the June 29, 2004 French custody order does not fall under the *Rooker-Feldman* doctrine, it is barred by reason of res judicata.[12] Under the doctrine of res judicata (referred to now as claim preclusion), a judgment in a prior suit involving the same parties, or parties in privity with them, bars a subsequent suit on the same cause of action. *Fairbank's Capital Corp. v. Milligan*, 234 Fed. Appx. 21 (3d Cir. 2007). "Res judicata acts as a bar to relitigation of an adjudicated claim between parties and those in

---

[12]This court may dismiss, *sua sponte*, claims barred by res judicata or claim preclusion. *See King v. East Lampeter Twp.*, 69 Fed. Appx. 94 (3d Cir. July 2, 2003) (appellate court affirmed district court's *sua sponte* dismissal of complaint on grounds of res judicata and collateral estoppel).

privity with them." *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 392 (3d Cir. 2002) (citing *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999)). "The rationale is that if the adjudication of an action is binding on parties in privity with the parties formally named in the litigation, then any claims against parties in privity should be brought in the same action lest the door be kept open for subsequent relitigation of the same claims." *Id.* at 392.

16. Collateral estoppel, also known as issue preclusion, refers to the preclusive effect of a judgment on the merits of an issue that was previously litigated or that could have been litigated. *Fairbank's Capital Corp. v. Milligan*, 234 Fed. Appx. 21 (3d Cir. 2007). Issue preclusion occurs "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'" *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (quoting Restatement (Second) of Judgments § 27 (1982)).

17. Plaintiff is barred under the doctrine of res judicata to relitigate his claims relating to the registration of the June 29, 2004 French custody order. *See Burlington N. R.R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231-32 (3d Cir. 1995). To the extent plaintiff seeks to raise additional claims alleging constitutional violations that could have been raised in his previous action, those claims are also barred. *See CoreStates Bank, N.A.*, 176 F.3d at 194. Notably, plaintiff unsuccessfully attempted to relitigate the registration of the June 29, 2004 French custody order in 2007 when he moved to

11

reopen the judgment in Family Court. The Family Court rejected his attempt as barred

by the doctrine of res judicata and the Delaware Supreme Court affirmed stating, "the

issues in this case are the same issues raised and resolved against [plaintiff] in a 2006

appeal filed in this Court. The Family Court did not err in holding that [plaintiff's] second

motion to reopen was barred by the doctrine of res judicata, which prohibits relitigation of

issues previously resolved by a court." *Little v. White*, No. 659,2007, 2008 WL 4216354,

*1 (Del. 2008).

18. **Younger Abstention**. Under the *Younger* abstention doctrine, a federal

district court must abstain from hearing a federal case which interferes with certain state

proceedings.[13] Under *Younger*, federal courts are prevented from enjoining pending

state proceedings absent extraordinary circumstances.[14] *Middlesex County Ethics*

*Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 437 (1982). The doctrine applies to

proceedings until all appellate remedies have been exhausted. *Huffman v. Pursue Ltd.*,

420 U.S. 592, 608 (1975); *see Reinhardt v. Commonwealth of Mass. Dep't of Soc.*

*Services*, 715 F.Supp. 1253, 1255 (S.D.N.Y. 1989). At the time plaintiff filed this case,

he was embroiled in an ongoing matter regarding registration of the April 5, 2005 French

order. When plaintiff initiated this case, Wehmer had sought to register the April 5, 2005

---

[13]The court may raise the issue of *Younger* abstention *sua sponte*. *O'Neill v. City of Philadelphia*, 32 F.3d785, n.1 (3d Cir. 1994).

[14]The abstention doctrine as defined in *Younger v. Harris*, 401 U.S. 37 (1971), provides that federal courts are not to interfere with pending state criminal proceedings. The *Younger* doctrine has been extended to civil cases and state administrative proceedings. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982); *Huffman v. Pursue Ltd.*, 420 U.S. 592 (1975).

12

French order in Family Court, plaintiff filed a motion to vacate, and the issue had not reached final resolution.

19. Three requirements must be met for the application of the *Younger* doctrine: (1) the existence of an ongoing state proceeding which is judicial in nature; (2) an ongoing state proceeding which implicates important state interests; and (3) an ongoing state proceeding which presents an adequate opportunity to raise constitutional challenges in the state proceeding. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. at 431-432. Also, the state proceeding need not be ongoing at the time the federal complaint is before the court as long as the plaintiff had an adequate opportunity to resolve the federal issue in a state proceeding. *Huffman v. Pursue Ltd.*, 420 U.S. at 608.

20. At the time this case was filed, there was an ongoing state judicial proceeding. Wehmer sought to register the April 5, 2005 French order two months before this case was filed and during the pendency of this action, on July 30, 2007, the Family Court vacated registration of that order. Even though there has been disposition of the April 5, 2005 French order issue, for purposes of *Younger*, the current disposition of the state court proceeding is irrelevant; the determinative factor is the existence of a state proceeding when pending at the time plaintiff filed his federal action. *See Addiction Specialists, Inc. v. Township of Hampton*, 411 F.3d 399, 409 (3d Cir. 2005).

21. As to the second factor, the State of Delaware has a substantial interest in the fair administration of child custody and parental rights proceedings and the enforcement of domestic relations orders registered in the state. *See Moore v. Sims*,

442 U.S. 415, 427 (1979) (recognizing such an interest in child abuse cases); *Anthony v. Council*, 316 F.3d 412, 421 (3d Cir. 2003) (state has overriding interest in ordering, monitoring, enforcing and modifying child support obligations).  Moreover, when considering the second prong of *Younger*, where the other elements of the test are met, neither injunctive nor declaratory relief will be available "in cases in which the federal relief would render the state court's orders or judgments nugatory." *Schall v. Joyce,* 885 F.2d 101, 108 (3d Cir. 1989).  As discussed below, the third prong of the *Younger* test is met.

22.  Here, plaintiff seeks "a preliminary and permanent injunction preventing the State of Delaware from enforcing the registered French orders or any related French orders that might in [the] future be presented in this State by [] Wehmer, whatever their form and format of presentation."  (D.I. 2 at 20, prayer for relief).  Any relief that could be granted by this court would directly impact Delaware's interest in protecting the authority of its judicial system.  "[I]nterference with a state judicial proceeding prevents the state not only from effectuating its substantive policies, but also from continuing to perform the separate function of providing a forum competent to vindicate any constitutional objections interposed against those policies.  Such interference also results in duplicative legal proceedings, and can readily be interpreted 'as reflecting negatively upon the state courts' ability to enforce constitutional principles.'" *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975) (quoting *Steffel v. Thompson*, 415 U.S. 452, 462 (1974)).  Thus, the state proceeding also implicates the important interest of preserving the authority of the state's judicial system.

14

23. As to third prong of *Younger*, the state court proceedings provide plaintiff with an adequate opportunity to present his federal claims. *See Division of Family Services v. Cheryl B.*, 750 A.2d 540 (Del. Fam. Ct. 1998); *Morgan v. Powell*, 659 A.2d 1243 (Del. Fam. Ct. 1994). More specifically, the Supreme Court has rejected the notion that "state processes are unequal to the task of accommodating the various interests and deciding the constitutional questions that may arise in child-welfare litigation." *Moore v. Sims*, 442 U.S. 415, 435 (1979). *Younger* only requires that plaintiff be afforded an opportunity to present a federal claim in state proceedings. *Juidice v. Vail*, 430 U.S. 327, 337 (1977). Notably, plaintiff was placed on notice by the Delaware Supreme Court that such an opportunity was available to him. When plaintiff appealed the registration of the June 29, 2004 French custody order, he attempted to raise constitutional issues for the first time in his appeal to the Supreme Court. The Supreme Court noted that plaintiff had never presented the claims to the Family Court in the first instance and, therefore, declined to consider them on appeal. It is evident that the Delaware Supreme Court will address such issues if properly presented.

24. Pursuant to *Younger*, the only basis for federal court interference is where one of four exceptions are met: (1) irreparable injury is both great and immediate; (2) the state law is flagrantly and patently violative of express constitutional prohibitions; (3) there is a showing of bad faith or harassment; or (4) other unusual circumstances call for equitable relief. *Mitchum v. Foster*, 407 U.S. 225, 230 (1972) (citing *Younger v. Harris*, 401 U.S. 37, 46-54 (1971)). None of these exceptions are present and, therefore, *Younger* abstention principles require the dismissal of plaintiff's challenge to the April 5,

15

2005 French order.

25. **Fundamental Rights of Plaintiff's Child**. Plaintiff filed the second cause of action on behalf of the minor child, V.L. (D.I. 2, ¶¶ 122-135) Plaintiff alleges that the State of Delaware violated the standard of "best interest of the child standard" in considering litigation filed by Wehmer pursuant to UCCJEA and UIFSA and in failing to recognize Greek law under the United Nations Convention on the Rights of the Child ("CRC"). (D.I. 2, second cause of action at 16-18) . He also alleges that the European Council Regulation ("IC") 2201/2003 applies to any determination of the rights of V.L. The claim is frivolous and fails to state a claim upon which relief may be granted.

26. Plaintiff acknowledges that the United States has not ratified the CRC. Moreover, In Delaware, the "paramount consideration" in custody determinations has always been aimed at addressing the "welfare and best interests of the child." *William H.Y. v. Myrna L.Y.*, 450 A.2d 406, 409 (Del. 1982). Indeed, it has long been established in the State of Delaware that the best interests of the child is the primary concern in matters of custody. *Friant v. Friant*, 553 A.2d 1186, 1190 (Del. 1989) (citing *Maureen F.G. v. George W.G.*, 445 A.2d 934, 936 (Del. 1982); *Cline v. Hartzler*, 227 A.2d 210, 212 (Del. 1967); *DuPont v. DuPont*, 216 A.2d 674, 680 (Del. 1966). Finally, this claim is merely a reiteration of count 1, albeit in the name of V.L. For the above reasons, the court will dismiss count II as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).

27. **Section 1983 Claims**. Plaintiff alleges that Wehmer, Neiderman, Suter, and Mauroeidi conspired to violate his constitutional rights in an apparent effort to state a

16

claim pursuant to 42 U.S.C. § 1983.  To state a claim under 42 U.S.C. §1983, a plaintiff

must allege "the violation of a right secured by the Constitution or laws of the United

States and must show that the alleged deprivation was committed by a person acting

under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*,

451 U.S. 527, 535 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474

U.S. 327, 330-31 (1986)).  To act under "color of state law" a defendant must be

"clothed with the authority of state law." *West*, 487 U.S. at 49.  Wehmer, Neiderman,

Suter, and Mauroeidi are private individuals who took legal action during the custody

dispute over V.L.  They are are not "clothed with the authority of state law" and,

therefore, the allegations fail to state a claim upon which relief may be granted and are

dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).  *See Reichley v. Pennsylvania Dep't of

Agric.*, 427 F.3d 236, 244-45 (3d Cir. 2005); *Biener v. Calio*, 361 F.3d 206, 216-17 (3d

Cir. 2004).

    28.  **Supplemental Claims.**  The court lacks subject matter jurisdiction over

plaintiff's challenges to the registration of the French court orders by reason of the

*Rooker-Feldman* doctrine, res judicata, abstains from certain claims under the *Younger*

abstention, and has dismissed other claims as frivolous and for failure to state a claim

upon which relief may be granted.  The only claims remaining are supplemental claims

against Wehmer, Neiderman, Suter, and Mauroeidi for conspiracy to violate plaintiff's

parental rights, conspiracy in the French courts, misleading the Delaware courts, fraud,

legal malpractice, blackmail, violation of the Greek Civil Code, and vexatious litigation.

The court exercises its discretion and declines to exercise jurisdiction over plaintiff's

supplemental claims.  *See* 28 U.S.C. § 1367; *De Asencio v. Tyson Foods, Inc.*, 342 F.3d

301, 309 (3d Cir. 2003).

      29. **Conclusion**.  For the above reasons, the April 19, 2007 service order is

**vacated**.  (D.I. 8)  The complaint is **dismissed** for lack of subject matter jurisdiction or,

in the alternative, by reason of res judicata and collateral estoppel; under the *Younger*

abstention doctrine; and as frivolous and for failure to state a claim upon which relief

may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).  The court **declines** to exercise

jurisdiction over the remaining supplemental claims.  Amendment of the complaint would

be futile.  *See Alston v. Parker*, 363 F.3d 229 (3d Cir. 2004); *Grayson v. Mayview State

Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002); *Borelli v. City of Reading*, 532 F.2d 950, 951-

52 (3d Cir. 1976).  The  court **denies** as **moot** the ex parte motion for renewed

consideration of prior motions and the ex parte motion for service and for the cost of

translation to be borne by the court or the office of the federal marshal.  (D.I. 33, 34)

                                    _____

                                    UNITED STATES DISTRICT JUDGE